IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

PARAMOUNT EMERGENCY MEDICAL SERVICE,
INC. d/b/a PARAMOUNT AMBULANCE SERVICE,

                 Plaintiff,                       OPINION and ORDER

   v.

                                                   21-cv-670-jdp

RURAL MEDICAL AMBULANCE SERVICE, INC.,

                 Defendant.

---

    This is a breach of contract case arising from an agreement to provide ambulance services. In 2018, plaintiff Paramount Emergency Medical Service, Inc., agreed to offer its ambulance services to defendant Rural Medical Ambulance Service, Inc., a nonprofit corporation organized by a group of Wisconsin municipalities. A few months into their relationship, Paramount terminated the contract, contending that Rural had failed to pay for services rendered. After Rural did not respond to Paramount's notice of termination and repeated invoices, Paramount sued to recover the unpaid balance.

    Rural moves to dismiss the complaint on the ground that Paramount's claims are barred by Wisconsin's notice-of-claim statute, Wis. Stat. § 893.80(1d). Rural contends that it is a government entity covered by the statute, and that Paramount failed to give the requisite forms of notice prior to filing suit. Paramount contends that Rural is not subject to the statute, and regardless, Paramount satisfied the notice requirements.

    Rural's motion is styled as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), but both Rural and Paramount submitted proposed findings of fact and affidavits with attached evidence in connection with their briefs. The court will therefore treat the motion as one for summary judgment.

The court will deny the motion. The evidence shows that Rural is a government entity subject to the notice-of-claim statute, but it also shows that Paramount gave the requisite pre-suit notice.

BACKGROUND

The following facts are drawn from the parties' proposed findings of fact and supporting evidence and are undisputed unless otherwise noted.

In 2013, a group of towns, a village, and a city in Lafayette County, Wisconsin jointly created Rural for the purpose of providing emergency medical services to their communities. Rural was incorporated under Wisconsin law as a nonstock, nonprofit corporation, and its bylaws reflect that it was organized in part to satisfy the municipalities' statutory obligation, under Wis. Stat. § 60.565, to provide ambulance services. Rural's board, president, and vice president are comprised of representatives of the participating municipalities.

In March 2018, Paramount entered into a temporary agreement with Rural to provide backup ambulance services for Rural at agreed-upon rates. The following month, the parties signed a second agreement saying that Paramount would provide Rural ambulance services through December 31, 2018. Under the contracts, Paramount provided ambulance services to Rural between April and July of 2018.

On July 31, 2018, Paramount sent Rural a notice of termination via certified mail. The notice stated that Paramount was terminating its services "due to lack of payment of sent bills" and that Rural owed Paramount $141,600 for unpaid services rendered through mid-June. Dkt. 10-3. Enclosed with the notice were the invoices that Paramount contended were unpaid. It's undisputed that Paramount sent the notice of termination, and Rural doesn't deny that it

received the notice. Over the next year, every month or so, Paramount sent statements (nine in total) to Rural listing the outstanding invoices, the total amount owed, and noting that interest was accruing on the unpaid balance. The last such statement was sent in July 2019. Rural alleges that it was never served with any documents from Paramount between 2018 and 2019, but it admits that it received "invoices and statements" from Paramount. Dkt. 7 at 8. Rural made a payment to Paramount in August of 2018, but otherwise the parties have not alleged that Rural responded to Paramount's notice of termination or statements.

In July 2021, Paramount sent Rural a letter demanding payment for the outstanding balance (which by then equaled $212,567.31 in past-due balances and over $100,000 in claimed interest). Dkt. 8-1. On October 25, 2021, Paramount initiated this suit alleging state-law contract violations and seeking $212,567.31 in damages plus interest, attorney fees, and costs.

The complaint alleges (and Rural does not dispute) that Paramount is an Iowa corporation with its principal place of business in Iowa, that Rural is a Wisconsin corporation with its principal place of business in Wisconsin, and that the amount in controversy exceeds $75,000. Based on the pleadings, Paramount has adequately alleged that the court has jurisdiction on the basis of diversity under 28 U.S.C. § 1332. However, at summary judgment or trial Paramount will have to come forward with specific evidence identifying each party's citizenship and the amount in controversy. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

ANALYSIS

Rural moved to dismiss the complaint under Rule 12(b)(6). But the parties agree in their opposition and reply briefs that the motion should be treated as one for summary judgment because both sides relied on evidence outside the pleadings. Rule 12(d) allows the court to convert a motion to dismiss into a motion for summary judgment under Federal Rule of Civil Procedure 56. The rule requires the court to allow the parties a reasonable opportunity to present material pertinent to the motion. The parties have had that opportunity and agree that the motion should be treated as one for summary judgment.

Summary judgment is proper if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment, the court must construe the facts and draw all reasonable inferences from those facts in favor of the nonmoving party. *See Auto. Mechs. Local 701 Welfare & Pension Funds v. Vangaurd Car Rental USA, Inc.*, 502 F.3d 740, 748 (7th Cir. 2007).

Rural contends that this case should be dismissed because Paramount didn't comply with the notice-of-claim procedures set out in Wis. Stat. § 893.80. The relevant part of the statute provides:

> [N]o action may be brought or maintained against any . . . political corporation, governmental subdivision or agency thereof . . . upon a claim or cause of action unless:
>
> (a) Within 120 days after the happening of the event giving rise to the claim, written notice of the circumstances of the claim signed by the party, agent or attorney is served on the . . . political corporation, governmental subdivision or agency . . . under [Wis. Stat. §] 801.11. Failure to give the requisite notice shall not bar action on the claim if the . . . corporation, subdivision or agency had notice of the claim and the claimant shows to the satisfaction of the court that the delay or failure to give requisite notice has not been prejudicial to the . . . corporation, subdivision or agency . . . ; and

> (b) A claim containing the address of the claimant and an itemized statement of the relief sought is presented to the appropriate clerk or person who performs the duties of a clerk or secretary for the defendant . . . corporation, subdivision or agency and the claim is disallowed.

Wis. Stat. § 893.80(1d).

The parties dispute two issues. First, they disagree on whether Rural is a "political corporation, governmental subdivision or agency thereof" and so subject to the statute. Second, if Rural is covered by the statute, they disagree on whether Paramount satisfied the two requirements set out in subsections (a) and (b). The requirement in subsection (a) is often called the "notice of injury" requirement and the requirement in subsection (b) is often called the "itemization" or "notice of claim" requirement. *Bostco LLC v. Milwaukee Metro. Sewerage Dist.*, 2013 WI 78, ¶¶ 88–89, 350 Wis. 2d 554, 835 N.W.2d 160.

## A. Rural is a governmental subdivision or agency

Rural argues that it is covered by the notice-of-claim statute because it is a "governmental subdivision or agency," or alternatively a "political corporation." Paramount contends that Rural is not a government entity covered by the statute. In deciding how to classify an entity under Wis. Stat. § 893.80, courts focus on whether the entity was organized by municipalities to satisfy a legislatively imposed duty, and what statute enabled the formation of the entity. *Mellenthin v. Berger*, 2003 WI App 126, ¶¶ 8–18, 265 Wis. 2d 575, 666 N.W.2d 120. The court concludes that Rural meets the definition of governmental subdivision or agency, so it need not decide whether Rural is a political corporation.

The Wisconsin Court of Appeals' decision in *Mellenthin* is on point. There, the defendant fire department was a nonstock, nonprofit corporation created by 10 Pepin County towns to provide fire protection in their region. *Mellenthin*, 2003 WI App 126, ¶ 2. The fire

department moved for summary judgment, contending that it was a government subdivision or agency under § 893.80 and that the plaintiffs had not given the requisite pre-suit notice.[1] *Id.*, ¶¶ 5–6. In opposition, the plaintiffs argued that the fire department was a private organization, not a government entity because it was incorporated under the state's general nonstock corporation law (Wis. Stat. ch. 181) and not a section of the Wisconsin code that specifically provides for the incorporation of fire companies (Wis. Stat. ch. 213). *Id.* The trial court had agreed with the plaintiffs and denied summary judgment, but on appeal the court of appeals reversed, holding that the statute of incorporation was immaterial to whether the notice-of-claim statute applied. *Id.*, ¶¶ 6, 13. Instead, what mattered was that Wisconsin towns are required, under Wis. Stat § 60.55(1)(a), to provide fire protection, and the evidence showed that the fire department there had been created "specifically in response to th[at] legislatively imposed duty . . . ." *Id.*, ¶¶ 13, 18. The court held that Wis. Stat. § 60.55(1)(a) was the statute that "enabled" the fire department's formation, and because the fire department existed in direct response to that statute's mandate, it was a "governmental subdivision or agency" of the municipalities that founded it. *Id*, ¶¶ 13, 18.

The facts here closely resemble those in *Mellenthin*. As with fire protection, Wisconsin towns are required by statute to provide ambulance services (or otherwise ensure that such services are available). Wis. Stat. § 60.565. And, like the fire department in *Mellenthin*, Rural

---

[1] In *Mellenthin*, the fire department argued that it was immune from suit under § 893.80(4), which is a different provision than the one at issue here, § 893.80(1d). *Mellenthin*, 2003 WI App 21, ¶ 1. Subsection (4) protects government entities from liability for intentional torts committed by their officers, officials, agents, or employees. Wis. Stat. § 893.80(4). However, the list of entities covered by subsection (4) is identical to that of subsection (1d), and the parties have not argued that the two provisions cover different entities. The court sees no reason to treat them differently.

is a nonstock, nonprofit corporation that was formed by several municipalities to satisfy their statutory obligation. Dkt. 12, ¶¶ 5–8. So, as in *Mellenthin*, the court concludes that Rural qualifies as a governmental subdivision or agency of the municipalities that founded it.

Paramount contends that Rural is not subject to § 893.80 for three reasons, none of which is persuasive. First, Paramount tries to distinguish *Mellenthin* on the ground that the mandate to provide fire protection services at issue there (Wis. Stat. § 60.55) differs from the one to provide ambulance services (Wis. Stat. § 60.565). Specifically, Paramount contends that unlike the fire protection statute, under the ambulance service statute a town need not provide ambulance services if "such services are provided by another person," and that a town can contract out its ambulance services to "one or more providers." Wis. Stat. § 60.565. This argument fails. As for contracting for services, there is no significant difference between the two statutes. Much like the ambulance service statute, the fire protection statute allows a town to "[c]ontract[] with any person" to provide fire protection for the town. Wis. Stat. § 60.55(1)(a)(3). As for a town's ability to rely on "another person" for ambulance services, it's true that there is no comparable language in the fire protection statute. But the difference doesn't matter here. In this case, as in *Mellenthin*, the municipalities that formed Rural did not rely on "another person" to provide ambulance services, they jointly created an entity specifically in response to the legislative mandate imposed on them by Wis. Stat. § 60.565. *Mellenthin*, 2003 WI App 126, ¶ 18.

Second, Paramount argues that the notice-of-claim statute doesn't apply to Rural because Rural does not meet the definition of a "political subdivision," which is defined elsewhere in Wisconsin statutes as "a city, village, town or county." *See, e.g.*, Wis. Stat. §§ 66.0139(1), 66.0143(1)(a). But it doesn't matter whether Paramount is a "political

subdivision." That term doesn't appear in § 893.80 and neither Paramount nor Rural contends that "political subdivision" is synonymous with "governmental subdivision or agency."

Third, Paramount argues that the statute doesn't apply because Rural is not an "agent" of the municipalities under the doctrine of respondeat superior. Dkt. 9 at 7–8 (citing *Kettner v. Wasau Ins. Cos.*, 191 Wis. 2d 723, 729–30, 530 N.W.2d 399 (Ct. App. 1995)). But that doesn't matter either. Rural contends that it is a governmental subdivision or *agency*, not an *agent* of the government. Agent and agency are separate concepts, and they are explicitly distinguished in the notice-of-claim statute. *See* Wis. Stat. § 893.80(1d) ("[N]o action may be brought or maintained against . . . [a] governmental subdivision or *agency* thereof nor against any officer, official, *agent* or employee . . . ." (emphasis added)). Paramount's agent-principal arguments are not applicable to this case.

B.  **Paramount's compliance with the notice-of-claim statute**

Rural is subject to the notice-of-claim statute, so the court turns to the parties' second dispute, whether Paramount met the statute's two requirements. Under § 893.80(1d)(a), before filing suit Paramount was required to give Rural "notice of injury," and under § 893.80(1d)(b), it was required to give Rural an itemized notice of its claim. Wisconsin courts have consistently recognized that substantial, rather than strict compliance with both requirements is all that is needed. *Townsend v. Neenah Joint Sch. Dist.*, 2014 WI App 117, ¶ 23, 358 Wis. 2d 618, 856 N.W.2d 644. The case law also evinces a policy of interpreting the notice statute to preserve bona fide claims so that they can be decided on the merits. *Smith v. Milwaukee Cty*, 149 Wis. 2d 934, 941–42, 440 N.W.2d 360 (1989) ("[A] construction which preserves a *bona fide* claim so that it may be passed upon by a competent tribunal is to be

preferred to a construction which cuts it off without a trial."); *see also Pool v. City of Sheboygan*, 2007 WI 38, ¶¶ 13–14, 21, 300 Wis. 2d 74, 729 N.W.2d 415.

### 1. Notice of injury

The primary purpose of the notice-of-injury requirement is to enable the defendant to "promptly investigate and evaluate the underlying circumstances that may later give rise to a claim." *Clark v. League of Wis. Municipalities Mut. Inc. Co.*, 2021 WI App 21, ¶ 12, 397 Wis. 2d 220, 959 N.W.2d 648. There are two ways for a claimant to meet the requirement. The first sentence of § 893.80(1d)(a) describes the first way, which is to give formal notice of injury: within 120 days of the event giving rise to the claim, the claimant must serve on the government entity, pursuant to Wisconsin's service of process rules, a written notice of the "circumstances of the claim" signed by the claimant or his or her agent or attorney. Wis. Stat. § 893.80(1d)(a); *Clark*, 2021 WI App 21, ¶ 13. Wisconsin courts strictly apply each of the formal notice elements. *Bostco*, 2013 WI 78, ¶ 88. Here, Paramount doesn't contend that the notice of termination or statements it sent to Rural were signed by its agent or attorney, or that they were served under Wisconsin's service of process rules. Paramount therefore did not give Rural formal notice of injury.

If a plaintiff doesn't strictly adhere to the formal notice requirements, the second sentence of § 893.80(1d)(a) describes the standard for substantial compliance: a claim will not be barred if the defendant had "actual notice of the claim" and the plaintiff can show that "the delay or failure to give the requisite [formal] notice has not been prejudicial to the defendant . . . ." Wis. Stat. § 893.80(1d)(a); *see also Clark*, 2021 WI App 21, ¶ 14. Unlike formal notice, which only requires notice of the circumstances from which a claim might arise, the notice required for substantial compliance must be "of the claim." *Clark*, 2021 WI App

9

21, ¶ 14. In *Clark,* the Wisconsin Court of Appeals held that this means the notice "should include *some indication* that the injured party intends to hold the defendant liable." *Id.,* ¶ 20 (emphasis added). Cases since *Clark* have not clearly articulated what is required for there to be "some indication" of intent to hold the defendant liable. As the Wisconsin Court of Appeals recently noted in an unpublished opinion, *Clark* cited an earlier decision, *Markweise,* as support for the "some indication" standard. *See Oleksak v. Gateway Tech. Coll.*, Case No. 2021AP1065, 2022 WL 3052387, at *5 (Wis. Ct. App. Aug. 3, 2022). In *Markweise,* the court of appeals held that meeting the actual notice standard requires only that the government entity "have knowledge about the events for which it may be liable" and "also the identity and type of damage alleged to have been suffered by a potential claimant." *Markweise v. Peck Foods Corp.*, 205 Wis. 2d 208, 220–21, 556 N.W.2d 326 (Ct. App. 1996). In an earlier decision also cited in *Clark*, the Wisconsin Supreme Court noted that documents satisfying actual notice "have usually, at a minimum, recited the facts giving rise to the injury and have indicated an intent on the plaintiffs' part to hold the [government entity] responsible for any damages resulting from the injury." *Felder v. Casey*, 139 Wis. 2d 614, 630, 408 N.W.2d 19 (1987), *rev'd on other grounds*, 487 U.S. 131 (1988). It's therefore clear that a document threatening suit will meet the actual notice standard (assuming it satisfies the other requirements). But if the document satisfies the standard in *Markweise* and *doesn't* threaten to hold the defendant liable, it's unclear what further showing is needed to establish that there was "some indication" that the claimant might sue.

That's the issue here. Paramount contends that the July 31, 2018, notice of termination and subsequent statements gave Rural actual notice of Paramount's claim, even though they did not threaten to hold Rural liable. Rural disagrees, contending that the documents sent in

10

2018–19 at most gave it constructive notice of Paramount's claim, which doesn't suffice. *See Elkhorn Area Sch. Dist. v. East Troy Cmty. Sch. Dist.*, 110 Wis. 2d 1, 6, 327 N.W.2d 206 (Ct. App. 1982).

Paramount's notice of termination satisfied the requirements set out in *Markweise*. The notice stated that Paramount was terminating its services because Rural had not paid its bills, and it provided an itemized list of the invoices that Paramount contended were unpaid. Dkt. 10-3. If a further showing is required, the court concludes that the circumstances surrounding the notice of termination gave Rural "some indication" that Paramount intended to sue. The parties in this case had a contractual relationship with straightforward terms of performance. Paramount provided ambulance services, and Rural paid for them. When Rural breached the contract by failing to perform, Paramount terminated the contract. The notice of termination, sent five months before the agreed-upon end date of services, informed Rural of Paramount's specific injury and its claim for reimbursement. And, over the following year, Paramount sent Rural numerous statements including the balance Rural allegedly owed. Had Paramount sent only a string of invoices, then Rural would be on firmer ground contending that it lacked actual notice of the claim. But the notice of termination and statements together gave Rural all the information it needed to "promptly investigate and evaluate the underlying circumstances" of Paramount's claim and gave Rural "some indication" that Paramount would seek to hold Rural liable for the alleged breach. *Clark*, 2021 WI App 21, ¶¶ 12, 20. In sum, the facts here show that Rural had actual notice of Paramount's claim.

Paramount must also show that its failure to give formal notice within 120 days of the alleged breach was not prejudicial to Rural. Wis. Stat. § 893.80(1d)(a); *Clark*, 2021 WI App 21, ¶ 23. Prejudice in this context is the inability of a party to adequately defend a claim

"because the party lacked sufficient opportunity to conduct a prompt investigation." *Id.* The inquiry asks "[w]hat, if anything would the defendant have done differently had the plaintiff timely served a statutorily compliant written notice describing th[e] circumstances [of the claim]?" *Id.*, ¶ 25. Rural contends that Paramount's failure to give formal notice was prejudicial for three reasons. First, Rural states that it cannot find a letter sent in early 2019 that could establish lack of knowledge concerning Paramount's claims. Second, Rural contends that since 2018 the participating municipalities and the composition of Rural's board of directors have changed. And third, Rural argues that it is prejudiced because it must rely on memories and material outside the four corners of the service agreements to defend itself against Paramount.

Rural may be correct that these reasons will make litigating this case harder now, but that's not the issue. The issue is whether Rural lacked the opportunity to investigate Paramount's claim in 2018. The evidence doesn't support such a finding. It is undisputed that Rural knew, in July 2018, that Paramount believed it was owed for unpaid services, and Paramount followed up repeatedly with statements detailing the amount it claimed it was owed. At that time, Rural could have investigated the matter to decide whether to dispute Paramount's claim or pay the outstanding balance. Rural's failure to do so, or its lack of records showing any investigation that was performed, don't show that Rural was prejudiced by Paramount's failure to give formal notice.

### 2. Itemized notice of claim

Paramount must also show that it complied with the itemization requirement of Wis. Stat. § 893.80(1d)(b). The primary purpose of the itemization requirement is to give the defendant the opportunity to "compromise and settle a claim, thereby avoiding costly and time-consuming litigation." *Yacht Club at Sister Bay Condo. Ass'n, Inc. v. Vill. of Sister Bay*,

12

2019 WI 4, ¶ 20, 385 Wis. 2d 158, 922 N.W.2d 95. Toward that end, two principles guide Wisconsin courts' analysis of whether the requirement is met. First, the itemized notice of claim must give the defendant enough information to decide whether to settle the claims, and second, as with the notice-of-claim statute generally, courts will construe itemized notices so as to preserve bona fide claims for judicial adjudication. *Bostco*, 2013 WI 78, ¶ 89. The itemized notice of claim must therefore substantially comply with four requirements. Specifically, it must (1) state each claimant's name and address, (2) include an itemized statement of the relief sought, (3) be presented to the appropriate clerk or person who performs the duties of a clerk, and (4) be disallowed by the government entity. Wis. Stat. § 893.80(1d)(b); *see also Thorp v. Town of Lebanon*, 2000 WI 60, ¶ 28, 235 Wis. 2d 610, 612 N.W.2d 59. Under Wis. Stat. § 893.80(1g), a defendant's failure to disallow a claim within 120 days of the itemized notice of claim operates as a disallowance.

Paramount contends that its monthly statements to Rural in 2018–19 satisfied the itemization requirement. Rural contends that it didn't have notice of Paramount's claim, if at all, until July 31, 2021, when Rural received Paramount's demand letter. Rural argues that because Paramount filed this lawsuit fewer than 120 days after that date, the disallowance period had not run and Paramount did not comply with § 893.80(1d)(b).

The court concludes that the notice of termination and statements sent in 2018–19 substantially complied with the first three requirements of § 893.80(1d)(b). Each document was addressed to Rural and states the specific amount that Paramount contended Rural owed. Each document therefore gave Rural enough information to decide whether to settle Paramount's claim. As for the fourth requirement, disallowance, Rural never sent Paramount a notice of disallowance in 2018 or 2019. Because the court concludes that the itemized notice

of claim occurred, at the latest, in 2019, Rural's failure to disallow the claim within 120 days of the last statement operates as a disallowance. So, the facts establish that Paramount met the itemized notice-of-claim requirement.

## ORDER

IT IS ORDERED that Rural's motion to dismiss, Dkt. 6, is treated as a motion for summary judgment and is DENIED.

Entered October 4, 2022.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge